**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY CASEY,<br><br>                              Petitioner,<br><br>         vs.<br><br>K. MENDOZA-POWERS, Warden,<br><br>                              Respondent. | Civil No.    1:07cv0274-JAH (PCL)<br><br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS CORPUS** |

**I.**

**FEDERAL PROCEEDINGS**

Timothy Casey (hereinafter "Petitioner"), is a state prisoner proceeding pro se with a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)  Petitioner challenges a July 22, 2004 decision of the California Board of Prison Terms (hereinafter "Board") finding him unsuitable for parole.  He alleges that his federal due process rights were violated because the Board's decision was not supported by sufficient evidence, did not properly weigh and consider positive factors, and impermissibly rested on his commitment offense.  (Pet. at 5.)

Respondent has filed an Answer to the Petition with an incorporated Memorandum of Points and Authorities in support thereof.  (Doc. No. 11.)  Respondent contends that habeas

relief is unavailable because the decisions of the state courts upholding the Board's finding of unsuitability were neither contrary to, nor involved an unreasonable application of, clearly established federal law. (Ans. at 8-14.)

Petitioner has filed a Traverse. (Doc. No. 22.) He challenges the finding of the state courts that sufficient evidence exists to support the Board's determination, and argues that because the Board's findings are identical to the reasons given by the District Attorney as to why Petitioner should be found unsuitable for parole, it "reeks of an arbitrary decision." (Traverse at 1-36.)

This matter has been assigned to visiting Judge John A Houston, United States District Judge for the Southern District of California. (Doc. No. 20.) For the following reasons, the Court finds that Petitioner is not entitled to habeas relief as to any claim presented.

## II.

## STATE PROCEEDINGS

Petitioner is currently serving a state prison sentence of seventeen years to life imposed following a 1982 conviction for second degree murder. (Ans. Ex. A.) His minimum parole eligibility date was September 6, 1992. (Ans. Ex. B, Parole Consideration Hr'g Tr. at 1.)

On July 22, 2004, Petitioner was found unsuitable for parole following his eighth subsequent parole suitability hearing, the hearing challenged here. (Id. at 88; Traverse Ex. F-2 at 1-2.) The presiding commissioner at that hearing read a summary of Petitioner's commitment offense into the record, which Petitioner agreed was accurate:

> During the early evening hours of May 10, 1982, Pomona Police Officers responded to a report of a possible shooting at 2333 Canterbury Street. Upon their arrival they observed the prisoner in front of the house. He walked out to a sidewalk and began yelling at a passing car. Officers approached him and asked him if he had called the police. He replied that he had. He said that he heard shots being fired. Officers noted that the prisoner appeared to be under the influence of an unknown substance. The prisoner's speech was thick and incoherent at times. The prisoner was unable to provide any other information and when asked if he had heard the shots, he stated quote, "I wasn't here," end of quote. The prisoner said that when he arrived home, he thought that the house looked strange. He then heard some shots and thought he heard someone in the bathroom. The prisoner pointed out the bathroom door and told officers that someone might be inside. One of the officers knocked on the bathroom door but received no response. The door was not locked but it appeared that someone was holding it shut. The officers forced the door open and found the victim kneeling on the floor. The victim's shoulder was leaning against the door, which held it

07cv0274

shut. Officers noted that the victim appeared to have suffered a gunshot wound to his right leg and to his left side. Paramedics were called but were unable to find the victim's heartbeat. A check of the door revealed three bullet holes, which appeared to have been made by a 38-caliber weapon and two other holes that were of a 22-caliber size. The prisoner was then placed under arrest. While being transported to the hospital for a blood test, the prisoner spontaneously said, quote "I want to talk to detectives, I want to confess to a murder," end of quote. However, he initially refused to talk to officers when first advised of his Constitutional rights. He later changed his mind and was again re-advised of his rights. The prisoner said that he had been paranoid recently because he had received information that a Jerome Teddy Marlborough, M-A-R-L-B-O-R-O-U-G-H, had accepted a contract to kill him in reference to a prior murder in which he had been charged but later released. Because of this fear the prisoner said that he had been keeping the 38-caliber revolver with him. The prisoner's sister, Sheila Hamilton, H-A-M-I-L-T-O-N, later found this revolver in the back yard of the location. Prisoner said that about two hours before the shooting, he had snorted an unknown amount of cocaine and smoked some hash and marijuana. He was in his mother's bedroom when he heard a noise in the kitchen. The prisoner then took the revolver and went out to investigate. He said that he saw a subject in the kitchen, which he thought was Marlborough. He fired two rounds at the victim. Who, the victim, then ran down the hallway and into the bathroom. The prisoner said that he fired three more shots through the door and then heard a voice say quote, "Tim" end of quote. The prisoner thought he recognized the voice (indiscernible) brother's, the victim. The prisoner called the police and also had some neighbors call the police. He admitted hiding the gun in some bushes.

(Ans. Ex. B, Parole Consideration Hr'g Tr. at 13-15.)

The Board found that Petitioner was "not yet suitable for release on parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 48.) The Board rested its decision on several factors. First was Petitioner's commitment offense, which the Board found showed a lack of regard for the life and the suffering of the victim, and which was carried out in a cruel fashion with an inexplicable motive. (Id. at 89.) The Board found that Petitioner had not yet sufficiently participated in beneficial self-help programs, and that his most recent disciplinary infraction while incarcerated indicated a need for self-help programming to help Petitioner admit his wrongdoing and develop skills which would enable him to obey the rules of society and remain clean and sober. (Id. at 89-92.) The Board referred to a psychological report as "contradictory," in that it stated that Petitioner's risk for violence in the community was average, but only if he were to be released on "high controlled parole," and only then if he remained free of drugs and alcohol and actively engaged in substance abuse relapse prevention programing. (Id. at 89-90.) The Board concluded that the psychological report supported a finding the Petitioner's behavior could be dangerous and

1    unpredictable if he were to be released on ordinary parole.  (Id.)  The Board gave as the final

2    reasons the opposition to release by the Los Angeles District Attorney's Office, and Petitioner's

3    prior unstable social history, which included criminality beginning at a young age, previous

4    failed attempts to correct his criminality, and drug and alcohol abuse.  (Id. at 90.)

5         Petitioner challenged the unsuitability finding in a habeas petition filed in the Los

6    Angeles County Superior Court on November 3, 2004. (Ans. Ex. C.)  That petition was denied

7    in a written order filed on January 21, 2005. (Ans. Ex. D.)  The superior court found "some

8    evidence" existed to support the Board's findings that Petitioner: (a) has an unstable social

9    history; (b) is an inmate who requires highly controlled parole and therefore still poses a risk of

10   danger to the community; and (c) needs additional self-help programming because he lacks

11   insight and continues to engage in manipulative behavior as shown by his most recent prison

12   disciplinary infraction. (Id. at 2-3.)  The court noted that the Board had improperly relied on the

13   District Attorney's opposition to release because that is not included in the statutory list of

14   factors upon which the Board may rely, and rejected Petitioner's argument that the Board had

15   abused its discretion in failing to properly consider positive factors which would tend to support

16   a finding of suitability.  (Id.)

17        Petitioner filed a second habeas petition in the superior court on February 16, 2005, which

18   the superior court denied as moot on May 2, 2005 because it was identical to the first petition.

19   (Ans. Exs. E-F.)  Petitioner filed an identical habeas petition in the California Court of Appeal

20   on September 28, 2005 which, apparently inexplicably, was denied on October 20, 2005 without

21   prejudice to re-filing in the superior court.  (Ans. Ex. G; Traverse Ex. F-1 at 2.)  Petitioner re-

22   filed his petition in the superior court on November 7, 2005 as directed, and it was once again

23   denied as moot because it was identical to the previous filed petitions.  (Ans. Mem. at H.)

24   Petitioner filed an identical habeas petition in the state supreme court on March 22, 2006. (Ans.

25   Ex. I.)  That petition was denied in an order filed on November 15, 2006, which stated: "Petition

26   for writ of habeas corpus is DENIED. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)"  (Ans.

27   Ex. J.)  Respondent contends the citation to Duvall indicates the petition was denied because

28   Petitioner had failed to plead sufficient facts to state a claim.  (Ans. at 5.)  While that petition

-4-

was pending, Petitioner submitted a second, identical habeas petition to the state supreme court on July 3, 2006. (Ans. Ex. K.) That petition was denied on November 28, 2006, with an order which stated: "Petition for writ of habeas corpus is DENIED. (See *In re Miller* (1941) 17 Cal.2d; *In re Clark* (1993) 5 Cal.4th 750.)" (Ans Ex. L.) Respondent contends that the citations to <u>Miller</u> and <u>Clark</u> indicates the petition was denied as successive. (Ans. at 5.) Respondent admits that Petitioner has exhausted his state court remedies, and does not argue that his claims are defaulted in this Court due to a violation of state procedural rules. (<u>Id.</u>)

### III.

### PETITIONER'S CLAIMS

Petitioner claims that:

(1) The Board's decision is not supported by the record and is arbitrary and capricious in violation of Petitioner's Fourteenth Amendment liberty interest in parole;

(2) The Board failed to consider all factors relevant to suitability for parole as required by state laws and regulations, resulting in a failure to provide Petitioner with an individualized consideration of parole suitability in violation of his Fourteenth Amendment right to due process; and,

(3) The Board denied parole based on the commitment offense in violation of state statutory requirements, which in turn violated Petitioner's right to due process under the Fourteenth Amendment. (Pet. at 5; Attachment to Pet. at 3-4.)

### IV.

### DISCUSSION

For the following reasons, the Court finds that Petitioner is not entitled to habeas relief as to any claim presented, and the Petition is therefore **DENIED**.

**A. Scope of Review**

Title 28, United States Code, § 2254(a), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

As discussed in detail below, the claims presented in the First Amended Petition here were adjudicated on their merits in the state courts. As amended, 28 U.S.C. § 2254(d) reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

/ / /

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." <u>Williams</u>, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.    Clearly established federal law applicable to Petitioner's claims.**

Clearly established federal law provides that a state prisoner may demonstrate a federal procedural due process violation by showing that: (1) a federally-protected life, liberty or property interest exists "which has been interfered with by the State"; and (2) "the procedures attendant upon that deprivation were constitutionally [in]sufficient." <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). The Supreme Court has recognized a federally-protected liberty interest in the expectancy of release on parole arising from state parole statutes. <u>See</u> <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 12 (1979) (recognizing that "the expectancy of release provided in" a Nebraska parole statute "is entitled to some measure of constitutional protection," but emphasizing that the statute "has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis."); <u>see also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 377-78 (1987) (holding that mandatory language in Montana parole statute, like the Nebraska statute, created "a presumption that parole will be granted," thereby giving rise to a protected liberty interest).

The Ninth Circuit has applied <u>Greenholtz</u> and <u>Allen</u> to find that mandatory language in the California parole statute "gives rise to a cognizable liberty interest in release on parole," <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002), which is "created, not upon the grant of a parole date, but upon the incarceration of the inmate." <u>Biggs v. Terhune</u>, 334 F.3d 910, 915 (9th Cir. 2003). The liberty interest in a finding of suitability for parole is created by Cal. Penal

Code § 3041, which provides that a parole release date "shall" be set after the prisoner has served his minimum term, unless the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration" for the prisoner. Cal. Penal Code § 3041(b); McQuillion, 306 F.3d at 902. California has promulgated regulations establishing criteria tending to show suitability and unsuitability for parole, the relative importance of which "in a particular case is left to the judgment of the panel." See Cal. Code Regs., tit. 15, § 2281(c)-(d).

Respondent argues that the only clearly established federal law applicable to challenges to state parole hearings in a federal habeas court is Greenholtz, which provides that an inmate is entitled to an opportunity to be heard and a statement of reasons denying parole, which is exactly what Petitioner received. (Ans. at 9.) Respondent is correct that Greenholtz held that when an inmate is afforded "an opportunity to be heard" at a state parole hearing, and is informed "in what respects he falls short of qualifying for parole," the inmate has been given "the process that is due." Greenholtz, 442 U.S. at 16. Nevertheless, in the context of prison disciplinary proceedings which result in the loss of good-time prison custody credits, the Supreme Court, in Superintendent of the Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), held that the deprivation of a state-created liberty interest in good-time prison custody credits comports with the minimum requirements of due process only when the findings of the prison disciplinary board are supported by some evidence in the record. Id. at 455-56. The Ninth Circuit has held that the "some evidence" standard of Hill is clearly established federal law for AEDPA purposes applicable to state parole proceedings such as the one at issue here, "because 'both directly affect the duration of the prison term.'" Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (quoting Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)).

The Ninth Circuit has reiterated that Hill's "some evidence" standard constitutes clearly established federal law applicable to state parole hearings for AEDPA purposes. Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007). Respondent contends that although the Ninth Circuit has

repeatedly held that the "some evidence" test applies when federal habeas courts are examining state parole hearings, the United States Supreme Court never has, and AEDPA denies precedential effect to such circuit court decisions. (Ans. at 11.) Respondent argues the Ninth Circuit recognized as much in Crater v. Galaza, 491 F.3d 1119 (9th Cir. 2007), where the Court upheld the constitutionality of AEDPA. See Crater, 491 F.3d at 1126 n. 8, citing Carey v. Musladin, 549 U.S. 70, 73-76 (2006) (holding that because Supreme Court has never addressed the effect of the particular conduct at issue on a defendant's fair trial rights, it was "an open question in our jurisprudence" and there was no clearly established federal law on the issue). Thus, because the "some evidence" standard of Hill has not been applied to parole hearings by the United States Supreme Court, Respondent contends that AEDPA precludes its application here.[1] (Id.)

The Court need not determine the exact contours of federal due process protections afforded to state prisoners in parole hearings. To the extent Greenholtz constitutes the only clearly established federal law applicable to Petitioner's claims, he clearly received all the process he was due. To the extent the Court must apply the holdings of Irons, Sass and Biggs that the "some evidence" standard of Hill represents clearly established federal law expounding the due process requirements to which Petitioner is entitled, his due process rights were not violated in connection to his parole hearing for the following reasons.

The Sass Court, interpreting Hill, held that due process requirements are satisfied if "some evidence" exists in the record to support the parole board's decision. Sass, 461 F.3d at 1128. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56). The Ninth Circuit has also held that "the evidence underlying the board's decision must have some indicia of reliability." Biggs, 334 F.3d at 915 (quoting Jancsek, 833 F.2d at 1390).

---

[1] After the Crater opinion was filed, the Ninth Circuit once again held that the Hill standard applies to parole hearings, although rehearing en banc was granted in that case after briefing closed in this case, and it has no precedential value. See Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), rehearing en banc granted, 527 F.3d 797 (9th Cir. May 16, 2008).

**C.    Proper standard of review applicable to Petitioner's claims.**

Petitioner claims that his due process rights under the Fourteenth Amendment to the United States Constitution were violated by: (1) The Board's finding of unsuitability for parole because that finding was not supported by the record and was arbitrary and capricious (claim one); (2) the Board's failure to duly consider all the relevant factors, which deprived him of the "individual consideration" to which he is entitled (claim two); and (3) the Board's reliance on his commitment offense (claim three).  (Attachment to Pet. at 3-4.)

To the extent any aspect of these claims rest solely on the application of California's Constitution, laws or regulations, without implicating federal due process, they do not present a cognizable claim.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that federal habeas relief does not lie for errors of state law).  However, as set forth above, Petitioner has a state-created, federally-protected liberty interest arising from the expectancy of release on parole created by state law.  Many of the arguments presented in support of the claims, both here and in the state courts, necessarily rely on the allegedly improper application of the state laws and regulations which inform and constrain the Board's discretion in making a finding of parole suitability.  It is these very constraints which create the federally-protected liberty interest at stake.  Greenholtz, 442 U.S. at 12; Allen, 482 U.S. at 377-78.

Thus, although the Court will necessary address Petitioner's contention that the Board failed to follow the constraints placed on its discretion by state law, Petitioner must, in order to obtain federal habeas relief, demonstrate that the state court's adjudication of his federal due process claims, assuming they were adjudicated on their merits, was either contrary to, or involved an unreasonable application of, Hill's "some evidence" standard, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See 28 U.S.C. § 2254(d)(1)-(2).  Even if Petitioner does make such a showing, he must also demonstrate that his federal due process rights were in fact violated.  Fry v. Pliler, 551 U.S. 112, ___, 127 S.Ct. 2321, 2327 (2007) (holding that section 2254(d) "sets forth a precondition to the grant of habeas relief . . ., not an entitlement to it.")  If the state courts did not adjudicate Petitioner's claims on their merits, but denied them on procedural grounds, then

the Court must conduct a de novo review of the record with respect to the claims.  Pirtle v. Morgan, 313 F.3d 1160, 1167-68 (9th Cir. 2002).  In either case, Petitioner will not be able to demonstrate a violation of his federal due process rights if "there is any evidence in the record that could support the conclusion reached by the [parole] board."  Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-56).

Petitioner presented his claims to the California Supreme Court in a habeas petition in the same manner as they are presented here.  (Ans. Ex. I.)  That petition was denied with a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995).  (Ans. Ex. J.)  Respondent contends the citation to Duvall indicates the petition was denied because Petitioner had failed to plead sufficient facts to state a claim.  (Ans. at 5.)  Page 474 of the Duvall opinion lists the pleading requirements for properly presenting a claim in a state habeas petition.  Duvall, 9 Cal.4th at 474.  A citation to this page of the Duvall opinion by the state court "may mean 'the available state remedies have not been exhausted as the California Supreme Court has not been given the required fair opportunity to correct the constitutional violation.'"  Medley v. Runnels, 506 F.3d 857, 869 (9th Cir. 2007) (en banc) (Opinion of Ikuta, Circuit Judge, dissenting), quoting Harris v. Superior Court, 500 F.2d 1124, 1128 (9th Cir. 1974).  In Medley, unlike here, Respondent did not expressly waive the exhaustion requirement, and the district court was therefore required to determine whether state court remedies still exist.  See id. at 869, citing 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.")  Respondent here has expressly waived the exhaustion requirement by admitting in the Answer that Petitioner's claims are exhausted.  (Ans. at 5.)  In order to determine the proper standard of review applicable to the claims presented in the Petition, however, the Court must determine whether the claims were adjudicated on their merits in the state courts or were denied on procedural grounds.

Petitioner presented the same claims which he presents here, in the same manner as they are presented here, in identical habeas petitions filed in the state supreme, appellate and superior
/ / /

1    courts.  (Ans. Exs. C, E, I, K.)  The superior court, the only state court to address the merits of

2    the claims, denied the petition in a written order which stated:

3           The Court has read and considered Petitioner's Writ of Habeas Corpus filed
       on November 3, 2004.  Having independently reviewed the record, giving
4      deference to the broad discretion of the Board of Prison Terms ("Board") in parole
       matters, the Court concludes that the record contains "some evidence" to support
5      the Board's finding that Petitioner is unsuitable for parole.  (*In re Rosenkrantz*
       (2002) 29 Cal.4th 616, 667; *see* Cal. Code Regs., tit. 15, § 2402.)

6
              The Board found Petitioner unsuitable for parole because the commitment
7      offense was carried out in a manner that demonstrated a lack of regard for the life
       and suffering of another [footnote: The Board's reliance on the verbiage "lack of
8      regard for life" is unfounded.  It would be difficult to imagine any murder which
       did not demonstrate a lack of regard for human life.  However, the statute seeks
9      to specifically reach those crimes in which the victim *suffered*.] (Cal. Code Regs.,
       tit. 15, § 2402(c)(1)(D)) and that the motive for the crime was inexplicable (Cal.
10     Code Regs., tit. 15, § 2402(c)(1)(E)).  The record reflects that Petitioner, who was
       under the influence of drugs at the time, apparently heard a noise in his kitchen.
11     [Footnote: Because Petitioner and the victim were the only witnesses, the only
       evidence of what occurred prior to the murder is the story of Petitioner.]  He
12     armed himself with a gun and went to investigate.  Upon entering the kitchen, he
       saw the victim, who Petitioner states he mistook for an individual he thought
13     posed a threat to him because of an earlier dispute, and he fired two rounds at the
       victim.  The victim, who was actually Petitioner's brother [footnote: Or possibly
14     half-brother.  It is unclear from the record.] ran into a bathroom.  Petitioner
       followed, firing the gun three more times through the bathroom door.  Petitioner
15     states he then heard someone say his name and recognized the voice as that of his
       brother.  He subsequently called the police and at some point prior to their arrival,
16     hid the gun in the bushes outside.  The police discovered the victim, who was
       sixteen at the time, slumped against the bathroom door with two bullet wounds,
17     one to his leg and one to his side.  Therefore, there is "some evidence" that the
       motive was inexplicable and that the crime demonstrated a lack of regard for
18     human suffering.

19            The Board also found Petitioner unsuitable because of a prior unstable
       social history.  (Cal. Code Regs., tit. 15, § 2402(c)(3).)  There is "some evidence"
20     to support that conclusion in that Petitioner admits to having associated with a
       crowd that "condoned" his drug use, leading to problems in school.  As well, the
21     record reflects Petitioner was made a ward of the Court on at least one occasion
       as a juvenile and was introduced to drugs by an older brother who later was also
22     murdered.

23            The Board also found Petitioner unsuitable because the psychological
       evaluation was "contradictory" in that it concluded Petitioner's risk for violence
24     in the community was "average" but only if released on "high control" parole.
       There is "some evidence" to support the Board's conclusion that an inmate who
25     requires highly controlled parole still poses a risk of danger to the community.  As
       well, the Board found that Petitioner has not sufficiently participated in self-help
26     programming (Cal. Code Regs., tit. 15, § 2402(d)(9)) and cited the Assistant
       District Attorney's opposition to parole.  While the District Attorney is permitted
27     to be present and to comment on an inmate's suitability for parole, the factors
       enumerated in California Code of Regulations, title 15, section 2402, for
28     determining suitability, do not include the District Attorney's opposition.
       Nonetheless, there is "some evidence" to support the Board's conclusion that

-12-

Petitioner needs additional self-help programming. In particular, and as noted by the Board, Petitioner received a disciplinary violation for "serious misconduct" in 2000 for over familiarity with staff. (Cal. Code Regs., tit. 15, § 2402(c)(6), Cal. Code Regs., tit. 15, § 3315.) The incident apparently involved Petitioner writing at least three letters to his female supervisor which were sexual in nature. However, when questioned by the Board during the most recent hearing, Petitioner stated he "may have" written them while seemingly giving some explanation for how perhaps someone else may have written the letters. He then gave several alternative explanations for why he "may have" written the letters such as they were part of a personal journal and that they were part of a homework exercise related to a sexual harassment course he was taking. Therefore, the record supports the Board's conclusion that Petitioner lacks insight and continues to engage in manipulative behavior.

The Court rejects Petitioner's argument that the Board failed to properly apply the consideration set forth in Penal Code § 3401. The record reflects the Board considered Petitioner's positive institutional gains but found they did not outweigh the factors for unsuitability and that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety in released from prison. (Penal Code § 3041(b).) Thus, the Board did not abuse its discretion by denying Petitioner's parole.

Accordingly, the petition is denied.

(Ans. Ex. D, In re Casey, No. BH003027, order at 1-3 (Cal.Sup.Ct. Jan. 21, 2005).)

Petitioner filed a second habeas petition in the superior court about a month later, which the superior court denied as moot because it was identical to the first petition. (Ans. Exs. E-F.) Petitioner thereafter filed an identical habeas petition in the appellate court, which was denied without prejudice to re-filing in the superior court. (Ans. Ex. G; Traverse Ex. F-1 at 2.) Respondent admits that it is unclear why the appellate court issued such an order, and indicates that the appellate court could not locate the file regarding that petition. (Ans. at 5 n.2.) Petitioner re-filed his petition in the superior court as directed, and it was once again denied as moot because it was identical to the previous filed petitions. (Ans. Ex. H.) Petitioner then filed an identical habeas petition in the state supreme court. (Ans. Ex. I.) As set forth above, that petition was denied in an order which stated: "Petition for writ of habeas corpus is DENIED. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)" (Ans. Ex. J.)

In Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision. Although the superior court issued a reasoned decision on the merits of the claims, when the identical petition was filed in the appellate court, it was denied without

prejudice to re-file it in the trial court, where it had already been filed twice. Thus, the appellate court did not issue a reasoned opinion, but issued an order which is apparently inexplicable. The same appears true of the state supreme court order denying the petition on the basis that the claims did not satisfy state pleading requirements. Petitioner's state petition seems clearly to have satisfied the <u>Duvall</u> pleading requirements, because it "both (i) states fully and with particularity the facts upon which relief is sought . . . as well as (ii) includes copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." <u>Duvall</u>, 9 Cal.4th at 474 (citations omitted).

To the extent the Court is able to characterize the state supreme and appellate court orders as unexplained, and therefore "look through" those orders and focus on the last (and only) reasoned decision of the state courts, the superior court order, the Court must determine whether that adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>Ylst</u>, 501 U.S. at 804; <u>Lockyer</u>, 538 U.S. at 75-76; <u>Williams</u>, 529 U.S. at 405-07, 412; <u>Miller-El</u>, 537 U.S. at 340. To the extent the Court is not permitted to look though the state supreme court order, but must accept at face value its finding that Petitioner did not satisfy state pleading requirements, Petitioner has failed to properly exhaust his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (holding that exhaustion is not satisfied "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor."); <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987) (holding that proper exhaustion of state judicial remedies requires a state prisoner to present the California Supreme Court with a fair opportunity to rule on the merits of every federal issue raised in his or her petition).

The exhaustion requirement may be satisfied notwithstanding a failure to present a claim to the state supreme court, "if it is clear that (the habeas petitioner's) claims are now procedurally barred under (state) law." <u>Gray v. Netherland</u>, 518 U.S. 152, 161 (1996), quoting <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Engle v. Isaac</u>, 456 U.S. 107, 125-26 n.28 (1982)

(noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition."); <u>Valerio v. Crawford</u>, 306 F.3d 742, 770 (9th Cir. 2002) (same), citing <u>Phillips v. Woodford</u>, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that [the] claims were nonetheless exhausted because 'a return to state court for exhaustion would be futile.'").  The state supreme court here has clearly informed Petitioner that it is unwilling to examine the merits of his claims as presently stated.  Although a citation to <u>Duvall</u> might ordinarily indicate a willingness to permit a state habeas petitioner to re-submit his claims in a proper procedural manner, it is unclear how Petitioner could restate his claims in a manner which would satisfy the state pleading requirements which he has apparently already satisfied. It is also unclear why the state appellate court was unwilling to review his claims.  Thus, it appears that Petitioner no longer has state court remedies available to him, and he has satisfied the technical requirements of exhaustion.  <u>Cassett v. Stewart</u>, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him."), quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>see also</u> 28 U.S.C.A. § 2254(c) (West 2006) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")

To the extent Petitioner no longer has state court remedies available to him, and he therefore meets the technical requirements of exhaustion, his claims would be procedurally defaulted.  <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.* (holding that a procedural default arises when a petitioner has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").  Respondent has, however, waived the affirmative defense of procedural default by failing to raise it in the Answer, and the Court is not required to raise it sua sponte.  <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997).  Rather, the Court is only permitted to raise the issue of procedural default sua sponte if "to do so serves the interests of justice, comity, federalism, and judicial efficiency."  <u>Windham v. Merkle</u>, 163 F.3d 1092, 1100 (9th Cir. 1998).

Raising the issue of procedural default sua sponte here will not serve the interests of justice and comity because the refusal by the state appellate and supreme courts to consider the merits of Petitioner's claims does not appear to be supported by the record, and because Respondent has waived the affirmative defenses of exhaustion and procedural default.

In sum, to the extent the Court can look though the state supreme and appellate court orders to the last reasoned decision of the state courts, the Court must determine whether the superior court order denying Petitioner's claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. To the extent the Court cannot look through the state supreme court order, and must consider it to be a denial on procedural grounds, then the Court must conduct a de novo review of the record with respect to Petitioner's claims. Pirtle, 313 F.3d at 1167-68. Even under such a review, the superior court's determination that some evidence exists in the record to support the Board's findings is entitled to some deference. See Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) (en banc) (noting that pre-AEDPA habeas review provides that "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution."); Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) (holding that even if the state court does not address the constitutional issue, where the reasoning of the state court is relevant to resolution of the constitutional issue, that reasoning must be part of federal habeas court's consideration even under a de novo review). As will be seen, Petitioner is not entitled to habeas relief under either standard.

### D.    Petitioner is not entitled to habeas relief.

Petitioner is not entitled to habeas relief because there is "some evidence" in the record to support the findings of the Board that Petitioner would pose an unreasonable risk to the public safety if released, and this evidence has sufficient indicia of reliability. First is Petitioner's commitment offense. Petitioner admitted that, while under the influence of cocaine, hashish and marijuana, he opened fire on his younger sibling, a teenager with whom Petitioner said he had

a "great" relationship, while the victim was in the kitchen of the victim's own home. (Ans. Ex. B, Parole Consideration Hr'g Tr. at 13-15, 24.) Petitioner explained that he was concerned the victim was someone out to kill him, and that when the victim fled down the hall into a bathroom, Petitioner pursued him and shot him an additional three times though the closed bathroom door, killing him. (Id. at 16-17.) Petitioner stated that he looked directly at his brother in the kitchen but, being under the influence, mistook him for the other man. (Id. at 16.) The victim was found with his shoulder leaning against the bathroom door. (Id.) These facts have sufficient indicia of reliability because Petitioner admitted they were true. The Board found that these facts demonstrated a lack of regard for the "suffering of another," that the killing "was carried out in a cruel fashion," and that the crime had a "really inexplicable" motive. (Id. at 89.) These findings conform to the criteria under California law for a finding of unsuitability for parole based on the commitment offense. See Cal. Code Regs., tit. 15, § 2281(c)(1).[2]

Petitioner clearly showed no consideration whatsoever for the suffering of his victim. Rather, due perhaps to his intoxicated state, he immediately opened fire on his teenage brother with whom he had a "great" relationship, who then fled down the hall into a bathroom. Even after the victim had sequestered himself in the bathroom with his shoulder holding the door shut and was presumably not in a position to attack Petitioner, the victim was shot three times through the bathroom door and killed. These facts clearly support the finding that Petitioner showed no concern for the victim's suffering and that the crime was carried out in a cruel fashion. These facts also support the finding that the motive for the crime was inexplicable. Petitioner's motive for the attack was his concern that the person he saw in the kitchen was there to kill him, but it is inexplicable that Petitioner would mistake his own brother for a man whom Petitioner was expecting to attack him. Even assuming Petitioner's state of intoxication explains

---

[2]  Cal. Code Regs., tit. 15, § 2281(c)(1) provides that "Circumstances tending to indicate unsuitability include: (1) Commitment offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include: (A) Multiple victims were attacked, injured or killed in the same or separate incidents. (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. (C) The victim was abused, defiled or mutilated during or after the offense. (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. (E) The motive for the crime is inexplicable or very trivial in relation to the offense."

the mistake of identity, it is inexplicable that Petitioner would shoot and kill his sibling through a closed bathroom door after he no longer posed an immediate threat.

Petitioner argues that his murder showed no more callous disregard for human suffering than most murder offenses. (Pet. Mem. at 14.) His murder, however, had a unique element of cruelty in that he opened fire on his unsuspecting family member in their own home, chased him down the hall, and then fired the fatal shots through the closed bathroom door as the victim was leaning against the door. Thus, the victim was killed in his own home, for an inexplicable motive, only after seemingly escaping to the safety of the bathroom. Petitioner's actions went far beyond what was necessary to protect himself from an imagined intruder, and therefore showed unusual cruelty and disregard for human suffering. Even accepting that Petitioner's intoxication may have vitiated the intent necessary to make such findings, or that his state of mind showed a genuine fear for his own life which overshadowed any malevolent intent, the findings regarding Petitioner's need to continue self-help programming, and in particular the psychological report indicating that Petitioner's risk of future violence is dependent upon close supervision and his ability to remain drug free, as discussed below, support a finding that Petitioner's release would pose an unreasonable risk of danger to the public safety.

The Board also found that Petitioner had an unstable social history marked by criminality beginning at a young age. (Ans. Ex. B, Parole Consideration Hr'g Tr. at 90.) The Board found that Petitioner had failed in his previous attempts to correct his criminality, as evidenced by a parole violation and a resultant county jail term, and that his unstable social history included abuse of cocaine, hashish, marijuana, PCP and alcohol. (Id.) Petitioner admitted that on several occasions as a juvenile between 1970 and 1974 he was detained by the authorities, and that he was placed on probation and declared a ward of the court twice during that period. (Id. at 26-27.) Petitioner admitted that as an adult he was arrested for grand theft, that he pleaded guilty to receiving stolen property in connection to that incident, and that as a result he was placed on formal probation. (Id.) He admitted that he violated that probation twice, in 1978 and 1979, and served time in county jail as a result. (Id. at 27.) Petitioner admitted that he was arrested for murder in 1979, that another person was found guilty of that murder, and Petitioner was

convicted of assault with a deadly weapon regarding that incident for which he served six months in county jail and was again placed on probation. (Id. at 27, 52.) His last arrest before the May 10, 1982 commitment offense was a March 3, 1982 arrest for being under the influence of a controlled substance. (Id. at 27-28.) Petitioner also indicated that he was raised primarily by his mother without the day-to-day involvement of his biological father, that he attended three different high schools where he had disciplinary problems, and that he lived with his maternal grandmother for a time. (Id. at 28-29.) He said he was introduced to drugs by his older brother, who was murdered when Petitioner was still a juvenile, and that he continued to associate with his brother's friends after his brother died, who condoned his drug use. (Id. at 33-34.) The Board's findings regarding Petitioner's unstable social history, criminality beginning at an early age, and failed previous attempts to correct his criminality, are supported by the record. Because Petitioner admitted these facts, they have sufficient indicia of reliability.

The Board next found that Petitioner "has not yet sufficiently participated in beneficial self-help programs." (Id. at 89.) The Board found relevant to this finding the psychological report and Petitioner's most recent prison disciplinary infraction. The psychological report concluded that Petitioner appears to be a reasonable candidate for a high controlled parole, and that he would pose an average risk of danger to the community if released on such parole, but only if he is completely free of drugs and alcohol and actively engaged in substance abuse relapse prevention programming. (Id. at 51-52.) The Board noted that the report took into consideration the fact that although Petitioner's juvenile history indicated violent offenses, including burglary, battery, and throwing an object at a vehicle, his adult convictions appeared to involve only property crimes, and any adult violence was more a result of a tendency to engage in anti-social activities and substance abuse which placed him in situations where there was an increased risk of violence. (Id. at 53.) The report concluded that "it would be absolutely imperative that [Petitioner] be subject to random drug and alcohol testing and be required to participate in relapse prevention programs," and that he "would appear to be a reasonable candidate for high control parole." (Id. at 53-54.) Petitioner has provided a copy of that report for the record, which supports the Board's findings in this regard. (Traverse Ex. D.)

Petitioner's history of misconduct involving violence while incarcerated included a single incident of mutual combat with his cell mate in 1986, which Petitioner indicated was self-defense. (Ans. Ex. B, Parole Consideration Hr'g Tr. at 52.) He received a disciplinary infraction in 1996 for soliciting money from the public. (Id. at 65-66.) His most recent institutional misconduct occurred in 1999-2000, and involved over-familiarity with staff arising from several letters found on Petitioner's work desk. (Id. at 54.) Petitioner initially indicated to the Board that he may or may not have written the letters, which were of a sexual nature and addressed to his supervisor, but then admitted he had written the letters but had done so just to put down the thoughts in his head, and said that although they were addressed to his supervisor he never intended to send them. (Id. at 54-60.) He also stated that he told the Board during his prior parole hearing that he prepared the letters as a homework exercise in a sexual harassment class. (Id. at 67-68.) The Board found it a matter of "great concern" that Petitioner refused to give a straight answer regarding the letters, was unable to admit to his wrongdoing with respect to this incident, and did not appreciate the seriousness of behavior, which was manipulative and amounted to sexual harassment. (Id. at 90-91.) The Board found that this showed an inability to live by the rules of society in prison, which in turn translated to unpredictability and a potential risk for re-offending if he were to be paroled. (Id. at 91.) The Board concluded that Petitioner needed continued participation in self-help programming in order to "further delve into the causative factors for his participation in" the commitment offense, and to develop skills which would allow him to remain clean and sober and deal with stress in a non-destructive manner. (Id.)

In light of the highly deferential nature of this Court's review, it was objectively reasonable for the state superior court to find that some evidence supported the Board's finding that Petitioner would pose an unreasonable risk of danger to the community if released. This includes the nature of the commitment offense, Petitioner's recent institutional misconduct, and the psychological report. These factors indicated that Petitioner's future behavior could be unpredictable at best, and at worst his return to drug use could signal a return to the same type of activity which led to his commitment, and that without closer supervision than is available

under ordinary parole conditions, Petitioner posed a threat to the community. Even under a de novo review of the record, the Board's findings in this regard are supported by the psychological report which indicates that Petitioner would pose an average danger only if he were to be closely supervised and only if he remained drug free and continued with relapse prevention programming. It was objectively reasonable for the Board to conclude that Petitioner's ability to remain drug free and continue with relapse prevention programming outside the institutional setting, an absolutely necessary prerequisite for even closely supervised release, had been called into question by Petitioner's failure to come to terms with his most recent institutional misconduct and admit that his behavior with respect to that incident was wrong.

Petitioner contends that the Board did not adequately consider factors which showed that he was suitable for parole. Petitioner is correct that the California regulations provide that suitability for release can be shown by several factors. See Cal. Code Regs., tit. 15, § 2281(d)(1)-(9) (identifying a circumstances tending to show suitability for release, including: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) motivation for the crime involved stress in life; (5) battered woman syndrome; (6) lack of criminal history; (7) prisoner's age reduces the probability of recidivism; (8) realistic parole plans and marketable skills; and (9) institutional behavior indicates an enhanced ability to function within the law if released.) Even assuming Petitioner satisfied several of these, the regulations also provide for discretion regarding how much weight the Board gives such factors. See Cal. Code Regs., tit. 15, § 2281(c) ("the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.") The Board in fact considered many positive factors and commended Petitioner on his progress. (Ans. Ex. B, Parole Consideration Hr'g Tr. at 43-49, 92-93.) Petitioner has failed to show that the Board did not properly take into consideration his positive factors. In light of the other factors discussed above, there is "some evidence" in the record to support the Board's ultimate finding that Petitioner poses a current risk irrespective of the relative weight given by the Board as to the positive factors.

Finally, Petitioner argues that the Board improperly relied on his commitment offense to deny him parole, and that "the Board in reality denied parole on the commitment offense and

nothing more." (Attachment to Pet. at 7, 10.) The Ninth Circuit has indicated that the "continued reliance in the future on an unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 915-17. However, as discussed above, the Board here did not rely on the static and unchanging factors arising prior to Petitioner's incarceration. Rather, the Board considered Petitioner's recent institutional misconduct for which he has yet to come to terms. The Board also relied on the psychological report, which placed Petitioner's risk of violence at an "average" level, but only if Petitioner was more closely supervised than ordinary parole and continued to remain drug free. Petitioner has not demonstrated that the Board failed to properly weigh the factors and come to an objectively reasonable determination that he currently posed an unreasonable risk to the public safety if released. See In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App. 2006) (noting that ultimate determination is whether, after weighing the factors tending to show suitability and unsuitability, the Board determines whether the prisoner would pose an unreasonable risk to pubic safety), citing In re Rosenkrantz, 29 Cal.4th 616, 686 (2002).

Because there is "some evidence" in the record to support the findings of the Board that Petitioner's release unreasonably endangers public safety, and because that evidence has sufficient indicia of reliability, no federal due process violation occurred. Irons, 505 F.3d at 851; Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915; Jancsek, 833 F.2d at 1390. Accordingly, the superior court's adjudication of Petitioner's claims, on the basis that the parole board's unsuitability determination was supported by "some evidence," is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. To the extent a de novo review of the record with respect to Petitioner's claims in necessitated by the denial of his claims by the state supreme court on procedural grounds, it is clear that "some evidence" in the record supports the Board's finding that Petitioner, if released, would presently pose an unreasonable risk to public safety. Petitioner is therefore not entitled to habeas relief, and his Petition for a writ of habeas corpus is **DENIED**.

# V.

## CONCLUSION AND ORDER

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

DATED:  March 27, 2009

JOHN A. HOUSTON
United States District Judge

CC:   ALL PARTIES

07cv0274